## KNOTE *v.* UNITED STATES.

1. The general pardon and amnesty granted by President Johnson, by proclamation, on the 25th of December, 1868, do not entitle one receiving their benefits to the proceeds of his property, previously condemned and sold under the confiscation act of July 17, 1862 (12 Stat. 589), after such proceeds have been paid into the treasury of the United States.

2. Whilst a full pardon releases the offender from all disabilities imposed by the offence pardoned, and restores to him all his civil rights, it does not affect any rights which have vested in others directly by the execution of the judgment for the offence, or which have been acquired by others whilst that judgment was in force. And if the proceeds of the property of the offender sold under the judgment have been paid into the treasury, the right to them has so far become vested in the United States that they can only be recovered by him through an act of Congress. Moneys once in the treasury can only be withdrawn by an appropriation by law.

3. To constitute an implied contract with the United States for the payment of money upon which an action will lie in the Court of Claims, there must have been some consideration moving to the United States, or they must have received the money charged with a duty to pay it over; or the claimant must have had a lawful right to it when it was received, as in the case of money paid by mistake. No such implied contract with the United States arises with respect to moneys received into the treasury as the proceeds of property forfeited and sold under that act.

APPEAL from the Court of Claims.

The petition of the claimant alleged that he was the owner of certain described personal property in West Virginia, which was seized and libelled by the authorities of the United States on the alleged ground of his treason and rebellion; that, by a decree of the District Court for that district, the property was condemned and forfeited to the United States, and sold; and the net proceeds of the sale, amounting to the sum of $11,000, were paid into the treasury of the United States, the proceedings for its condemnation and sale having been taken under the confiscation act of July 17, 1862; that subsequently, by

virtue of the amnesty proclamation of the President, of Dec. 25, 1868, the claimant was pardoned and relieved of all disabilities and penalties attaching to the offence of treason and rebellion, for which his property was confiscated, and was restored to all his rights, privileges, and immunities under the Constitution and the laws made in pursuance thereof, and thus became entitled to receive the said proceeds of sale; but that the United States, disregarding his rights in the premises, had refused to pay them over to him, and therefore he prayed judgment against them. Upon demurrer for insufficiency of the facts thus alleged to constitute a cause of action the petition was dismissed, and hence the present appeal.

The proclamation of President Johnson relied upon is in the following words: —

"Whereas the President of the United States has heretofore set forth several proclamations offering amnesty and pardon to persons who had been or were concerned in the late rebellion against the lawful authority of the government, which proclamations were severally issued on the eighth day of December, 1863, on the twenty-sixth day of March, 1864, on the twenty-ninth day of March, 1865, on the seventh day of September, 1867, and on the fourth day of July, in the present year.

"And whereas the authority of the Federal government having been re-established in all the States and Territories within the jurisdiction of the United States, it is believed that such prudential reservations and exceptions, as at the dates of said several proclamations, were deemed necessary and proper, may now be wisely and justly relinquished, and that a universal amnesty and pardon for participation in said rebellion, extended to all who have borne any part therein, will tend to secure permanent peace, order, and prosperity throughout the land, and to renew and fully secure confidence and fraternal feeling among the whole people, and their respect for and attachment to the national government designed by its patriotic founders for the general good.

"Now, therefore, be it known that I, Andrew Johnson, President of the United States, by virtue of the power and authority in me vested by the Constitution, and in the name of the sovereign people of the United States, do hereby proclaim and declare unconditionally, and without reservation, to all and to every person who directly or indirectly participated in the late insurrection or rebellion, a full

pardon and amnesty for the offence of treason against the United States, or of adhering to their enemies during the late civil war, with restoration of all rights, privileges, and immunities under the Constitution and the laws which have been made in pursuance thereof." 15 Stat. 711.

*Mr. Thomas Jesup Miller,* and *Mr. Linden Kent,* for the appellant.

As to offences against the United States, the pardoning power of the President is unlimited, except in cases of impeachment. Const. U. S., art. 2, sect. 2; *Ex parte Wells,* 18 How. 307; *Ex parte Garland,* 4 Wall. 333.

The pardon relied on here is in general terms, and its meaning and intent are clear beyond cavil. Even if it were ambiguous, it is to be construed most beneficially to the parties who claim its benefits. 4 Bl. Com. 401; *Wywill's Case,* 5 Co. 49; *United States v. Klein,* 13 Wall. 128.

In England, a restoration of forfeited estates, if they have not inured to the benefit of some third person, is inherently incident to a full and complete pardon. 3 Coke, Inst. 233; 4 Bl. Com. 402; 1 Russell, Crimes, 175; 3 id. 621; Bac. Abr., tit. Pardon; *Cole's Case,* Plow. 401; *Brown v. Brashaw,* 1 Bulst. 154; *Toomb's Adm'r v. Ethrington,* 1 Sand. 353; *Ludlam v. Lopez,* 1 Stra. 529; *Biggin's Case,* 5 Co. 50; *Burgess v. Wheat,* 1 Eden, 201; *Brown v. Waite,* 2 Mod. 133.

The same rule prevails in this country. Such a pardon, therefore, wipes out an offence and its consequences. *Cathcart v. Robinson,* 5 Pet. 264; *United States v. Wilson,* 7 id. 160; *Ex parte Wells,* 18 How. 307; *Ex parte Flavel,* 8 Watts & S. (Pa.) 197; *Ex parte Garland,* 4 Wall. 380; *Perkins v. Stevens,* 24 Pick. (Mass.) 280; *Armstrong's Foundry,* 6 Wall. 766; *United States v. Padelford,* 9 id. 531; *United States v. Klein,* 13 id. 128; *Armstrong v. United States,* id. 154; *Pargoud v. United States,* id. 156; *Carlisle v. United States,* 16 id. 147; *Osborn v. United States,* 91 U. S. 474; 2 Op. Att.-Gen. 329; 3 id. 317; 4 id. 458; 6 id. 488; 8 id. 281; 10 id. 452.

The proceeds of the sale of the claimant.s property are held by the government, and no third party is interested in them. His right to them under the pardon imposes legal obligations on the government, and may be judicially enforced. *Brown v.*

*United States,* 1 McCahon, 229 ; *Osborn* v. *United States, supra* ·
*United States* v. *Klein, supra.*

· *The Solicitor-General, contra.*

1. At common law, a simple charter of pardon did not re
store forfeited property which had already vested in the crown
A special clause of restitution in the charter was required for
that purpose.   Chitty on Prerogative, 102.

2. The clause of restitution in the present case being limited
to rights, &c., under the Constitution, does not include rights
of property. *Slaughter-House Cases,* 16 Wall. 36 ; *United States*
v. *Cruikshank et al.,* 92 U. S. 542.

3. At all events, without authorization by Congress, the
President has no power, whether by a' clause in a charter of
pardon or otherwise, to render to the claimant the moneys
derived from the sale of his property, under a decree of for-
feiture, which have been paid into the treasury of the United
States.

MR. JUSTICE FIELD delivered the opinion of the court.

The question presented for determination in this case is,
whether the general pardon and amnesty granted by President
Johnson, by proclamation, on the 25th of December, 1868, will
entitle one receiving their benefits to the proceeds of his prop-
erty, previously condemned and sold under the confiscation act
of 1862, after such proceeds have been paid into the treasury.

The proclamation of the President extended unconditionally
and without reservation a full · pardon and amnesty for the
offence of treason against the United States, or of giving aid
and comfort to their enemies, to all persons who had directly
or indirectly participated in the rebellion, with a restoration
of all rights, privileges, and immunities under the Constitution
and the laws made in pursuance thereof.   Some distinction
has been made, or attempted to be made, between pardon and
amnesty.   It is sometimes said that the latter operates as an
extinction of the offence of which it is the object, causing it
to be forgotten, so far as the public interests are concerned,
whilst the former only operates to remove the penalties of the
offence.   This distinction is not, however, recognized in our
law.   The Constitution does not use the word " amnesty ; " and,

except that the term is generally employed where pardon is extended to whole classes or communities, instead of individuals, the distinction between them is one rather of philological interest than of legal importance.   At all events, nothing can be gained in the consideration of the question before us by showing that there is any difference in their operation.   All the benefits which can result to the claimant from both pardon and amnesty would equally have accrued to him if the term " pardon " alone had been used in the proclamation of the President.   In Klein's case, this court said that pardon included amnesty. 13 Wall. 128.

The rights, privileges, and immunities under the Constitution and laws which the proclamation restored to parties embraced by its terms, are such as all citizens possess and enjoy.   That instrument does not declare that any subjects of property are restored with reference to which such rights, privileges, and immunities might be invoked; nor can its language be thus construed without a manifest perversion of its sense.

The effect of a pardon upon the condition and rights of its recipient have been the subject of frequent consideration by this court; and principles have been settled which will solve the question presented for our determination in the case at bar.   *Ex parte Garland,* 4 Wall. 333; *Armstrong's Foundry,* 6 id. 766; *United States* v. *Padelford,* 9 id. 531; *United States* v. *Klein,* 13 id. 128; *Armstrong* v. *United States,* id. 155; *Pargoud* v. *United States,* id. 156; *Carlisle* v. *United States,* 16 id. 147; *Osborn* v. *United States,* 91 U. S. 474.   A pardon is an act of grace by which an offender is released from the consequences of his offence, so far as such release is practicable and within control of the pardoning power, or of officers under its direction.   It releases the offender from all disabilities imposed by the offence, and restores to him all his civil rights.   In contemplation of law, it so far blots out the offence, that afterwards it cannot be imputed to him to prevent the assertion of his legal rights.   It gives to him a new credit and capacity, and rehabilitates him to that extent in his former position.   But it does not make amends for the past. It affords no relief for what has been suffered by the offender in his person by imprisonment, forced labor, or otherwise; it

does not give compensation for what has been done or suffered, nor does it impose upon the government any obligation to give it. The offence being established by judicial proceedings, that which has been done or suffered while they were in force is presumed to have been rightfully done and justly suffered, and no satisfaction for it can be required. Neither does the pardon affect any rights which have vested in others directly by the execution of the judgment for the offence, or which have been acquired by others whilst that judgment was in force. If, for example, by the judgment a sale of the offender's property has been had, the purchaser will hold the property notwithstanding the subsequent pardon. And if the proceeds of the sale have been paid to a party to whom the law has assigned them, they cannot be subsequently reached and recovered by the offender. The rights of the parties have become vested, and are as complete as if they were acquired in any other legal way. So, also, if the proceeds have been paid into the treasury, the right to them has so far become vested in the United States that they can only be secured to the former owner of the property through an act of Congress. Moneys once in the treasury can only be withdrawn by an appropriation by law. However large, therefore, may be the power of pardon possessed by the President, and however extended may be its application, there is this limit to it, as there is to all his powers, — it cannot touch moneys in the treasury of the United States, except expressly authorized by act of Congress. The Constitution places this restriction upon the pardoning power.

Where, however, property condemned, or its proceeds, have not thus vested, but remain under control of the Executive, or of officers subject to his orders, or are in the custody of the judicial tribunals, the property will be restored or its proceeds delivered to the original owner, upon his full pardon. The property and the proceeds are not considered as so absolutely vesting in third parties or in the United States as to be unaffected by the pardon until they have passed out of the jurisdiction of the officer or tribunal. The proceeds have thus passed when paid over to the individual entitled to them, in the one case, or are covered into the treasury, in the other.

The views here expressed have been applied in practice, it

is believed, by the executive departments of the government. In 1856, the question was submitted by the Secretary of the Treasury to the Attorney-General, whether, under a pardon of the President remitting a forfeiture to the United States, imposed by a judgment of a United States district court, the proceeds of the forfeiture deposited by the marshal in one of the public depositories to the credit of the United States, but not brought into the treasury by a covering warrant, could be refunded to the marshal, and through him to the party entitled, in execution of the remission granted by the President; and the Attorney-General replied, that the pardoning power was completely vested in the President, and did not require in its exercise any aid from Congress, nor could it be curtailed by Congress, but that, if the money had actually passed into the treasury, it could not be refunded without an act of Congress; for the Constitution itself, in the provision that "no money shall be drawn from the treasury but in consequence of appropriations made by law," opposed an insuperable obstacle to such a proceeding, and that this provision was of equal efficiency with the pardoning power, and operated as a restriction upon it. But the Attorney-General held, and so advised the Secretary, that, if the money had only gone into the hands of some officer of the government, and the right of third parties had not attached, it might be refunded. 8.Op. Att.-Gen., p. 281. As an instance where property acquired by a third party, whilst the judgment against the offender is in force, cannot be affected by a subsequent pardon, he cited the case of the disposition of a convict's property during the time of his civil incapacity. The pardon does not restore the property. And, as an instance where a right, other than of property, acquired during the same period, is also unaffected, he cited the case where, by the law of the country, a conviction of felony operates to dissolve a marriage, and the innocent party contracts new bonds of matrimony. The subsequent pardon does not dissolve the new bonds. *Matter of Deming*, 10 Johns. 232.

The same views were, to some extent, applied in the recent case of *Osborn* v. *United States*, *supra*, where proceeds of property, confiscated under the act of July 17, 1862, for the alleged treason of the claimant, remaining in the registry, were

ordered by the Circuit Court to be delivered to the claimant who had been pardoned, Mr. Justice Miller, presiding in the Circuit Court, holding that, until an order of distribution of the proceeds was made, or the proceeds were actually paid into the hands of the party entitled, as informer, to receive them, or into the treasury of the United States, they were within the control of the court, and that no vested right to the proceeds had accrued so as to prevent the pardon from restoring them to the claimant, and impliedly holding, that, had they been thus paid, either to the informer or into the treasury, the right to them would have passed beyond the control of the court. On appeal, this court affirmed the decision, observing, that it was of the essence of a pardon that it relieved the offender from the consequences of his offence ; and as in that case the forfeiture of his property was one of those consequences, it restored the property to him, unless the rights of other parties had vested, and the power of restoration was thus gone.

An attempt is made by counsel to give some expressions used in the opinion of the court a wider meaning, so as to support the claim here presented ; but the language will not sustain the conclusion sought. There was no consideration of the effect of the pardon upon the proceeds of the forfeited property when paid into the treasury, but only of its effect upon those proceeds whilst under the control of the court in its registry. Any language which seemingly admits of a broader interpretation must be restricted to the facts of the case. There was no intention of expressing any opinion that a pardon could do away with the constitutional requirement as to money in the treasury ; whilst there, it is the property of the United States.

There is another view of this case, which must lead to an affirmance of the judgment of the Court of Claims. The jurisdiction of that court is limited to claims founded upon a law of Congress, or upon a regulation of an executive department, or upon a contract, express or implied, with the government. The claim here presented rests upon a supposed implied contract to pay to the claimant the money received as the proceeds of the forfeited property. To constitute such a contract, there must have been some consideration moving to the United States ; or they must have received the money, charged with a duty tc

pay it over; or the claimant must háve had a lawful right to it when it was received, as in the case of money paid by mis- take. But here there was no consideration moving to the United States; they were charged with no duty in respect to the money; there was no legal claim by any one to it when received into the treasury ; and no law since has required it to be paid to the claimant. There can be, therefore, no implied contract in the case.                          *Judgment affirmed.*