[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15755
_____

D.C. Docket No. 1:11-cv-00412-WS-C

MAX LEROY REED, JR.,
ELIZABETH REED,
individually and on behalf of all similarly
situated individuals,

Plaintiffs - Appellants,

versus

CHASE HOME FINANCE, LLC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(July 29, 2013)

Before MARTIN and FAY, Circuit Judges, and GOLDBERG,[*] Judge.

PER CURIAM:

Max Elroy Reed and Elizabeth Reed (the Reeds) sued Chase Home Finance (Chase), claiming that Chase did not comply with the disclosure requirements in the Truth in Lending Act (TILA), 15 U.S.C. § 1641(g),[1] when Chase did not inform them that it had been assigned an interest in their mortgage.  The district court granted summary judgment in favor of Chase.  The district court ruled that as servicer of the loan, Chase fell into the "safe harbor" exception of 15 U.S.C. § 1641(f), which provides that a servicer is exempt from the § 1641(g) disclosure requirements when the assignment is "solely for the administrative convenience of the servicer in servicing the obligation."  15 U.S.C. § 1641(f)(2).  The Reeds appeal.  Having had the benefit of oral argument, and after careful consideration, we affirm.

## I.

In November 2006, the Reeds refinanced their mortgage.  They signed a promissory note to Pensacola Guarantee Mortgage (Pensacola), and the mortgage named Pensacola as the lender.  The mortgage named Mortgage Electronic

---

[*] Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

[1] Section 1641(g) provides in relevant part: "[N]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer."  15 U.S.C. § 1641(g)(1).

Registration Systems, Inc. (MERS) as the nominee for the lender, and the lender's successors and assigns. The mortgage also identified MERS as the mortgagee.

Shortly after closing, Pensacola transferred ownership of the promissory note to SunTrust Mortgage (SunTrust). SunTrust in turn transferred ownership of the note to Fannie Mae in early 2007. Also shortly after closing, Pensacola transferred servicing responsibilities for the loan to SunTrust. SunTrust then transferred servicing of the loan to Chase in September 2007.

As servicer of the loan, Chase gave the Reeds notice of intent to foreclose after the Reeds missed several mortgage payments. On September 3, 2010, Chase announced it would foreclose. Four days later, MERS executed an "assignment of Mortgage" (the Assignment), transferring to Chase "all right, title and interest of [MERS] in and to that certain Mortgage executed by [the Reeds]."

## II.

The Reeds contend that the Assignment made Chase the new owner of the debt, and triggered Chase's obligation under § 1641(g) to inform them that it was the new owner of the debt. In response, Chase argues that MERS assigned its interest in the mortgage so that Chase could service the loan, because Chase could not have foreclosed—"a core servicing duty"—without assignment of the mortgage. Chase claims the assignment "was solely for the administrative

3

convenience of the servicer" within the meaning of § 1641(f), so it was not required to inform the Reeds of the assignment.

We review the district court's grant of summary judgment de novo.  Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313 (11th Cir. 1999).  With that in mind, and even if we assume—without deciding—that Chase would otherwise be subject to the § 1641(g) disclosure requirements as the new owner of the debt, we conclude that Chase was exempt from § 1641(g)'s disclosure requirement because the assignment was made "solely for the administrative convenience of the servicer in servicing the obligation."  See § 1641(f)(2).

In deciding whether the Assignment was an "administrative convenience" under § 1641(f), we must first consider the meaning of the term.  Because TILA does not define "administrative convenience," we look to the ordinary meaning of the words.  United States v. Silvestri, 409 F.3d 1311, 1333 (11th Cir. 2005) ("Courts must assume that Congress intended the ordinary meaning of the words it used." (quotation marks omitted)).  To determine the ordinary meaning of a term, "courts often turn to dictionary definitions for guidance."  Id. (quotation marks omitted).  The word "convenience" is defined by Merriam-Webster as "fitness or suitability for performing an action or fulfilling a requirement."  Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary (last visited July 23, 2013).  The word "administrative" connotes the act or process of managing or

4

supervising.  Id.  Thus, the ordinary meaning of "administrative convenience" is that which allows performance of a managerial action or requirement.

It is not disputed in the record before us that the purpose of the Assignment was to allow Chase to foreclose on the Reeds' property.  It is also undisputed that Chase could not have foreclosed on the property without the Assignment.  Thus, we conclude that the Assignment was an "administrative convenience" within the meaning of § 1641(f) because the Assignment allowed Chase to perform foreclosure, a requirement of servicing the loan.  For these reasons, Chase was not subject to § 1641(g)'s disclosure requirements.[2]

## III.

The district court's grant of summary judgment is **AFFIRMED**.

---

[2] The Reeds argue that if we consider anyone who provides, in some part, an administrative convenience to fall within the § 1641(f) exception, then the disclosure requirement will be toothless.  However, the Reeds have conceded that the purpose of the Assignment was to allow Chase to foreclose and Chase has explained that servicing of loans can require foreclosing.  This being the case, the Assignment constituted an "administrative convenience" within the meaning of § 1641(f).