[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13445
_____

Agency No. A093-022-401


JOSE FERNANDO CASTILLO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 27, 2014)

Before MARCUS and EDMONDSON, Circuit Judges, and TREADWELL,[*]
District Judge.

_____

[*] Honorable Marc T. Treadwell, United States District Judge for the Middle District of Georgia,
sitting by designation.

MARCUS, Circuit Judge:

This case of first impression concerns whether the Board of Immigration Appeals ("BIA") correctly found petitioner Jose Fernando Castillo removable as an aggravated felon, even though the Georgia State Board of Pardons and Paroles had earlier pardoned Castillo for the conviction that rendered him removable. On appeal, Castillo claims the BIA should have applied 8 U.S.C. § 1227(a)(2)(A)(vi), which waives the removability of a criminal alien who receives a "full and unconditional pardon." We disagree. Under the plain meaning of § 1227(a)(2)(A)(vi), a pardon is only "full" when it restores the totality of rights abrogated by the underlying conviction. Here, Castillo's pardon did not reinstate his Second Amendment right to keep and bear arms, a privilege he lost under Georgia law as a result of his conviction. Thus, Castillo did not receive a "full" pardon, and § 1227(a)(2)(A)(vi) does not apply. After thorough review, we deny Castillo's petition.

I.

The undisputed facts and procedural history are straightforward. Castillo, a native and citizen of the Dominican Republic, became a lawful permanent resident of the United States in 1990. On April 7, 1993, Castillo, then 27 years old, pled guilty to statutory rape, a felony violation of Ga. Code § 16-6-3(a). At the time of his guilty plea, the Georgia criminal statute provided:

2

A person commits the offense of statutory rape when he engages in sexual intercourse with any female under the age of 14 years and not his spouse, provided that no conviction shall be had for this offense on the unsupported testimony of the female.

Ga. Code § 16-6-3(a) (1993).[1]  The trial judge imposed a five-year prison sentence but allowed Castillo to serve it on probation.

In April 2012, after determining that Castillo was a "law-abiding citizen and . . . fully rehabilitated," the Georgia State Board of Pardons and Paroles -- the state's highest pardoning authority -- granted Castillo's application for a pardon. In relevant part, the pardon established:

[P]ursuant to Article IV, Section II, Paragraph II(a) of the Constitution of the State of Georgia, the Board, without implying innocence, hereby unconditionally fully pardons said individual, and it is hereby

ORDERED that all disabilities under Georgia law resulting from the above stated conviction(s) and sentence(s), as well as, any other Georgia conviction(s) and sentence(s) imposed prior thereto, be and each and all are hereby removed; and

ORDERED FURTHER that all civil and political rights, except the right to receive, possess, or transport in commerce a firearm, lost under Georgia law as a result of the above stated conviction(s) and sentence(s), as well as, any other Georgia conviction(s) and

---

[1] The Georgia Code has since been amended to provide:

A person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, provided that no conviction shall be had for this offense on the unsupported testimony of the victim.

Ga. Code § 16-6-3(a) (2006).  Neither party disputes that the predecessor statute controls.

3

sentence(s) imposed prior thereto, be and each and all are hereby restored.

On October 23, 2012, the Department of Homeland Security ("DHS") served Castillo with a notice to appear before an immigration judge ("IJ") in removal proceedings.  In relevant part, the government charged Castillo with being subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony after admission into the country.[2]  Castillo was detained and held in an Immigration and Customs Enforcement facility pending the determination of his case.

Soon after his detention, Castillo moved to terminate removal proceedings.  Before the IJ, Castillo principally claimed he was entitled to a waiver of removability under § 1227(a)(2)(A)(vi).[3]  In full, § 1227(a)(2)(A)(vi) provides:

> Clauses (i), (ii), (iii), and (iv) [of 8 U.S.C. § 1227(a)(2)(A)] shall not apply in the case of an alien with respect to a criminal conviction if the alien subsequent to the criminal conviction has been granted a full

---

[2] The DHS also charged Castillo with removability under 8 U.S.C. § 1227(a)(2)(E)(i), as an alien convicted of a crime of child abuse after admission.  In later administrative proceedings, however, the BIA found that Castillo was not removable under § 1227(a)(2)(E)(i), since his statutory rape conviction preceded the September 30, 1996, effective date for that ground of removability.  The government has not petitioned for review of that determination, and thus § 1227(a)(2)(E)(i) falls outside the scope of this appeal.

[3] In his Response to the Government's Position on Respondent's Motion to Terminate Proceedings, Castillo also argued that the DHS had improperly classified Georgia's statutory rape law as an aggravated felony.  However, Castillo did not reprise this argument in his opening brief in this Court, and "the law is by now well settled in this Circuit that a legal claim or argument not briefed before the court is deemed abandoned and its merits will not be addressed." Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).  Thus, we have no occasion to decide whether Castillo's statute of conviction in fact qualifies as an aggravated felony under the immigration laws.

4

and unconditional pardon by the President of the United States or by the Governor of any of the several States.

8 U.S.C. § 1227(a)(2)(A)(vi).  Castillo asserted that his pardon was "full and unconditional," since it was subject to no condition that could nullify its effect. Moreover, though the pardon did not restore his firearm privileges, Castillo argued that § 1227(a)(2)(A)(vi) requires only a pardon that clears a criminal conviction, not one that reinstates rights.

On February 14, 2013, the IJ denied Castillo's motion to terminate removal proceedings.  The IJ reasoned that Castillo's pardon was not "full and unconditional," as required under § 1227(a)(2)(A)(vi), because it did not restore Castillo's Second Amendment rights.  The IJ therefore found Castillo removable under § 1227(a)(2)(A)(iii) and ordered him deported to the Dominican Republic.

Castillo appealed to the BIA, arguing that the IJ had erred as a matter of law in failing to apply the waiver-of-removability provision contained in § 1227(a)(2)(A)(vi).  On July 9, 2013, in a non-precedential decision dismissing Castillo's appeal, a three-member panel of the BIA upheld the IJ's determination that Castillo's pardon was not "full and unconditional."  Jose Fernando Castillo, A093-022-401, at 2 (BIA July 9, 2013).  The Board explained that, "[d]espite the language of the pardon, i.e. 'unconditionally fully pardons,' we find that any pardon that deprives an individual of rights under the Second Amendment to the Constitution cannot reasonably be considered 'full and unconditional' for purposes

5

of the [Immigration and Nationality] Act." Id. Further, the panel reasoned that a pardon would be "'full and unconditional' only if it erased all legal disabilities flowing from a conviction, regardless of whether the legal disability is referred to as a 'condition' or an 'exception.'" Id. Finally, the BIA noted in passing that "the restoration of one's firearms rights is available from the Georgia State Board of Pardons and Paroles upon meeting additional conditions." Id. Castillo timely petitioned for review of the BIA's decision dismissing his appeal.

## II.

Castillo raises just one issue on appeal. The success or failure of his petition depends entirely on the meaning of "full and unconditional pardon," as Congress intended that term in § 1227(a)(2)(A)(vi). Generally, we lack the power to review a final order of removal entered against an alien found removable as an aggravated felon. See 8 U.S.C. § 1252(a)(2)(C). However, we retain jurisdiction to evaluate "questions of law raised upon a petition for review," see id. § 1252(a)(2)(D), and to examine "the application of an undisputed fact pattern to a legal standard," see Jean-Pierre v. U.S. Att'y Gen., 500 F.3d 1315, 1322 (11th Cir. 2007). When we interpret § 1227(a)(2)(A)(vi), we answer a purely legal question. Moreover, to determine whether § 1227(a)(2)(A)(vi) controls this case, we must apply undisputed facts to a legal standard. Thus, contrary to the government's suggestion, we have jurisdiction over Castillo's appeal.

6

A.

We review de novo the BIA's interpretation of the Immigration and Nationality Act ("INA"), deferring to the Board's permissible construction only where the statute is ambiguous. See Cole v. U.S. Att'y Gen., 712 F.3d 517, 523 (11th Cir. 2013) (citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984)). Where, as here, the BIA has issued its own opinion, we exclusively review that decision, except to the extent that it expressly adopts the IJ's opinion. See Imelda v. U.S. Att'y Gen., 611 F.3d 724, 727 (11th Cir. 2010). Like the BIA, we hold that Congress clearly and unambiguously intended § 1227(a)(2)(A)(vi) to apply only when an alien secures a pardon restoring all rights vitiated by the underlying adjudication of guilt. Since the statute is clear, we have no occasion to examine its terms against the template of Chevron or Skidmore deference.

We decipher congressional intent from "the plain language of the statute." Wilderness Watch & Pub. Emps. for Envtl. Responsibility v. Mainella, 375 F.3d 1085, 1091 (11th Cir. 2004). The INA does not define "full and unconditional pardon," so we must look instead to the "ordinary meaning" of those terms. See United States v. Silvestri, 409 F.3d 1311, 1333 (11th Cir. 2005) ("Courts must assume that Congress intended the ordinary meaning of the words it used." (quoting Consol. Bank, N.A., Hialeah Fla. v. U.S. Dep't of Treasury, 118 F.3d

1461, 1463 (11th Cir. 1997))); Wilderness Watch, 375 F.3d at 1092 ("When interpreting the language of a statute, 'we generally give the words used their ordinary meaning.'" (quoting Griffith v. United States, 206 F.3d 1389, 1393 (11th Cir. 2000) (en banc))).

"To determine the ordinary meaning of a term, 'courts often turn to dictionary definitions for guidance.'" Reed v. Chase Home Finance, LLC, 723 F.3d 1301, 1303 (11th Cir. 2013) (per curiam) (quoting Silvestri, 409 F.3d at 1333).  While Castillo received an "unconditional" pardon, in the sense that its effect was not contingent on a condition precedent or a condition subsequent, relevant dictionaries overwhelmingly suggest that his pardon was not "full."  In 1952, when Congress first provided a waiver of deportability for a "full and unconditional pardon," see Pub. L. No. 82-414, § 241(b), 66 Stat. 208 (1952), Black's Law Dictionary defined "full pardon" to mean "[o]ne freely and unconditionally absolving party from all legal consequences, direct and collateral, of crime and conviction."[4]  Black's Law Dictionary 1269 (4th ed. 1951) (emphasis added).  Subsequent editions underscore this plenary nature of full pardons, even specifying that a full pardon "restores the offender's civil rights without qualification."  Black's Law Dictionary 1221 (9th ed. 2009).  Non-legal

_____

[4] Earlier, in 1917, Congress had made available a waiver of deportability to aliens pardoned for crimes of moral turpitude.  See Pub. L. No. 64-301, § 19, 39 Stat. 889-90 (1917) ("[T]he provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned . . . .").  However, until the 1952 revision, the statute did not specifically call for a pardon that was "full and unconditional."

dictionaries place similar emphasis on a full pardon's sweeping consequences. See, e.g., Webster's New Int'l Dictionary 1776 (2d ed. 1952) (defining "pardon" to mean "release from penalty; remission of punishment"); id. 1017 (defining "full" to mean "having within its limits all that it can contain"). Simply put, the common meaning of a "pardon" that is "full" contemplates the annulment of all future punishment, including the restoration of all lost rights.

Our analysis of § 1227(a)(2)(A)(vi) is also informed by case law interpreting the phrase, "full pardon," in other contexts. See Lorillard v. Pons, 434 U.S. 575, 583, 98 S. Ct. 866, 871 (1978) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country[,] they are presumed to have been used in that sense unless context compels to the contrary." (first alteration in original) (quoting Standard Oil v. United States, 221 U.S. 1, 59, 31 S. Ct. 502, 515 (1911))). Although no circuit has interpreted the text of § 1227(a)(2)(A)(vi), its terms have a well-settled legal meaning. In Ex Parte Garland, 71 U.S. (4 Wall.) 33 (1866), a case involving presidential pardons for former Confederate officials, the Supreme Court observed:

> [T]he inquiry arises as to the effect and operation of a pardon, and on this point all the authorities concur. A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes

9

the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.

Id. at 380-81 (emphases added); see Knote v. United States, 95 U.S. 149, 153 (1877) (noting that a pardon "releases the offender from all disabilities imposed by the offence").[5]

After Garland, in different contexts, courts have consistently observed that a full pardon bars all future punishment for the pardoned conviction. See, e.g., United States v. Sutton, 521 F.2d 1385, 1388 (7th Cir. 1975) (invoking Knote to examine consequences of "full" Illinois pardon under statute criminalizing receipt of firearm by convicted felon); United States v. Barrett, 504 F.2d 629, 634 (6th Cir. 1974) (citing Garland to analyze "partial" Kentucky pardon under statute criminalizing receipt of firearm by convicted felon); Kwai Chiu Yuen v. I.N.S., 406 F.2d 499, 499, 501-02 (9th Cir. 1969) (applying Garland to evaluate scope of "full" California pardon under immigration statute nullifying effect of pardons in narcotics conviction cases). It is beyond dispute that "[a]ny deprivation or suspension of . . . rights for past conduct is punishment." Cummings v. Missouri,

---

[5] Subsequent cases have rejected as dicta the observation in Garland that a pardon "blots out of existence the guilt" associated with a conviction. See Burdick v. United States, 236 U.S. 79, 94, 35 S. Ct. 267, 270 (1915) (explaining that a pardon "carries an imputation of guilt"); In re North, 62 F.3d 1434, 1437-38 (D.C. Cir. 1994) (per curiam) (collecting cases contradicting Garland's expansive language regarding a pardon's impact upon an offender's guilt). But no court has questioned the settled proposition that a full pardon "exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed." United States v. Wilson, 32 U.S. (7 Pet.) 150, 160 (1833) (emphasis added).

10

71 U.S. (4 Wall.) 277, 322 (1866). Thus, across the legal spectrum, a full pardon "restores to [the offender] all his civil rights." <u>Knote</u>, 95 U.S. at 153; <u>see United States v. Matassini</u>, 565 F.2d 1297, 1305 (5th Cir. 1978) (recognizing a difference between "a full pardon" and a pardon that "limited [an offender's] right to possess a firearm" under felon-in-possession laws).[6]

Nothing in § 1227(a)(2)(A)(vi) suggests that Congress spoke these familiar words in any unfamiliar sense. To the contrary, the consensus surrounding the definition of "full pardon" plainly dictates the meaning of that phrase in § 1227(a)(2)(A)(vi). Accordingly, we hold that a pardon is only "full" within the meaning of § 1227(a)(2)(A)(vi) when it vacates <u>all</u> future punishment for the underlying conviction, thereby restoring <u>all</u> lost rights. Here, Castillo's pardon did not reinstate his "right to receive, possess, or transport in commerce a firearm." Thus, his pardon was not "full" and § 1227(a)(2)(A)(vi) does not waive his removability.

## B.

Castillo argues, however, that § 1227(a)(2)(A)(vi) requires only a pardon that clears from the books a criminal conviction, not necessarily one that vindicates rights. According to Castillo, Congress unambiguously intended this more limited meaning by specifying that removability "shall not apply in the case of an alien

---

[6] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

11

with respect to a criminal conviction if the alien subsequent to the criminal conviction has been granted a full and unconditional pardon."  8 U.S.C. § 1227(a)(2)(A)(vi) (emphasis added).  In other words, Castillo claims the phrase, "with respect to a criminal conviction," narrows the meaning of a "full" pardon in this context.  We are unpersuaded.

For starters, Castillo's interpretation contradicts the most natural reading of the text.  See, e.g., Barber v. Thomas, 560 U.S. 474, 492, 130 S. Ct. 2499, 2511 (2010) (expressing preference for "the most natural reading of the statutory language").  Read naturally, the phrase, "with respect to a criminal conviction," simply emphasizes that § 1227(a)(2)(A)(vi) applies only to aliens removable by reason of a criminal conviction to begin with.  By contrast, there is no evidence -- in the text or the structure of the statute -- to support Castillo's alternative suggestion that the words, "with respect to a criminal conviction," operate to limit the phrase, "full and unconditional pardon."  Against the well-settled and plenary meaning of a "full" pardon, this omission is significant.  See Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468, 121 S. Ct. 903, 909-10 (2001) (Congress does not "hide elephants in mouseholes").

Moreover, the history of § 1227(a)(2)(A)(vi) militates against Castillo's reading of the statute.  Fifty years after Garland's explication of a "full" pardon, Congress enacted § 1227(a)(2)(a)(vi)'s earliest predecessor, which waived the

12

deportability of "one who has been pardoned." See Pub. L. No. 64-301, § 19, 39 Stat. 889-90 (1917). Thirty-five years later, Congress doubled down, specifying that the provisions "respecting the deportation of an alien convicted of a crime or crimes shall not apply . . . in the case of any alien who has subsequent to such conviction been granted a full and unconditional pardon." See Pub. L. No. 82-414, § 241(b), 66 Stat. 208 (1952) (emphasis added). Congress approved the statute's present language in 1990, providing that certain removability grounds "shall not apply in the case of an alien with respect to a criminal conviction if the alien subsequent to the criminal conviction has been granted a full and unconditional pardon." See Pub. L. No. 101-649, § 602, 104 Stat. 5080 (1990) (codified at 8 U.S.C. § 1227(a)(2)(A)(vi) (2012)) (emphasis added).

Nothing in the legislative history of the INA even hints that Congress added the words, "with respect to a criminal conviction," in an attempt to alter the substance of the existing pardon waiver. Certainly, nothing suggests the phrase was meant to compress the well-settled meaning of a "full" pardon. In fact, the Act's legislative history strongly implies that, in 1990, Congress aimed only to preserve the existing waiver. The language enacted in 1990 had also appeared in earlier proposals, including the unsuccessful Immigration Exclusion and Deportation Amendments of 1988. See H.R. 4427, 100th Cong. § 3(a)(2)(A)(iii) (as reported by H. Comm. on the Judiciary, Aug. 12, 1988) (providing waiver "in

13

the case of an alien <u>with respect to a criminal conviction</u> if the alien subsequent to the criminal conviction has been granted a full and unconditional pardon" (emphasis added)).  In a report accompanying the 1988 proposal, the House Committee on the Judiciary addressed this language, notably explaining that "[t]he waiver for aliens who have been pardoned by the President or Governor of a State . . . is <u>retained</u> and redesignated in this legislation."  H.R. Rep. No. 100-882, at 43 (1988) (emphasis added).  Consequently, we think the 1990 legislation, which used exactly the same language as the failed 1988 proposal, similarly preserved the substance of the earlier pardon waiver.

In short, there is simply no basis for Castillo's claim that a full and unconditional pardon "with respect to a criminal conviction" is anything other than a "full and unconditional pardon," as that concept is commonly understood.  By its plain terms, a "full pardon" annuls all future punishment and restores all lost rights.  Castillo received no such pardon from the Georgia State Board of Pardons and Paroles.  Accordingly, the waiver provision contained in § 1227(a)(2)(A)(vi) does not apply.

**PETITION DENIED.**