### A. D. JONES *v.* BOARD OF REGISTRARS OF ALCORN COUNTY.

ELECTOR. *Pardon.   Infamous crime.   Constitution, art. 4, sect. 17.*

A man having been convicted of embezzlement, in the Federal Court for Mississippi, who is subsequently pardoned by the president of the United States before the expiration of his term of imprisonment, is restored to his right to be registered as a voter of this State.

ERROR to the Circuit Court of Alcorn County.

Hon. J. A. GREEN, Judge.

A petition for a writ of *mandamus*, to compel the board of registrars of Alcorn County to register the plaintiff in error as a voter, was denied on the ground that he had been convicted of the embezzlement of United States funds while acting as postmaster, and sentenced, by the Federal Court for the Northern District of Mississippi, to imprisonment for two years in the penitentiary, although he had been pardoned by the president of the United States before his term of imprisonment expired.

*Reynolds & Reynolds,* for the plaintiff in error.

1. The offence of embezzlement is not a crime which disqualifies from voting, within the meaning of the Constitution (art. 4, sect. 17 ; art. 12, sect. 2), neither our statutes nor the Federal laws bringing it within the class specified. The plaintiff in error was convicted under sect. 5490, United States Revised Statutes, which was enacted for the enforcement of sect. 3639, United States Revised Statutes. The acts specified in those sections are strictly *mala prohibita,* and are

not declared to be punishable by imprisonment in the penitentiary.   1 Greenl. on Ev., sect. 373 ; Whart. Cr. Law, 290 ; Bouv. L. Dic. 411 ; 1 Bishop's Cr. Law, sects. 743, 744 ; 1 Ph. on Ev. 22.   If, from his conviction, any disability attached to the petitioner, he was relieved therefrom by the pardon, which gave him a new credit and capacity.   4 Bla. Comm. 402 ; Archb. Cr. Pr. 378 ; 1 Greenl. on Ev., sects. 377, 378 ; *Matter of Deming*, 10 Johns. 232 ; *The People* v. *Pease*, 3 Johns. Cas. 333 ; 1 Ph. on Ev. 27 ; 1 Bishop's Cr. Law, sect. 762 ; 1 Kent's Comm. 305, 306 ; *Ex parte Garland*, 4 Wall. 333, 374 ; Code 1871, sect. 2865.

*M. Green*, on the same side.

*T. C. Catchings*, Attorney-General, for the defendant in error.

1. The offence of which Jones was convicted was an infamous crime within the Constitution.   Art. 4, sect. 17 ; Code 1871, sect. 2855 ; Bouv. L. Dic., tit. "Infamy ;" *Jones* v. *Harris*, 1 Strobh. 160.   The conviction of an infamous crime under the laws of another State, or of the United States, stands on the same footing as conviction under the law of this State. *The State* v. *Candler*, 3 Hawks, 393 ; *Chase* v. *Blodgett*, 10 N. H. 22 ; *Clarke* v. *Hall*, 2 Har. & McH. 378 ; *Jones* v. *Harris*, 1 Strobh. 160.   The pardon did not restore the right to vote, of which Jones was deprived by our Constitution because of his conviction.   As to this matter, each State establishes its own regulations, subject to the Fifteenth Amendment to the Constitution of the United States.   Cooley's Const. Lim. 598.   The restriction on the petitioner's right to vote became fixed by his conviction, and was not removed by the pardon, the effect of which was to restore him to the rights and privileges of a citizen of the United States, but not to political rights, without the assent of the State whose sovereign power had excluded him therefrom.   *Ridley* v. *Sherbrook*, 3 Coldw. 576.   The president cannot control the State in its regulations of the elective franchise.   The provision of the State Constitution on this subject is the lawful exercise of the State's

authority to prescribe the qualifications of voters, and the rule cannot be changed or modified without the State's assent. Notwithstanding the pardon, the fact of conviction remains, which places the petitioner under the constitutional anathema. The pardon obliterated his guilt, but did not wipe out the thing which disqualified him for voting. *In re Spenser*, 7 Cent. L. J. 84. The disqualification is not part of the penalty prescribed for the punishment of the crime, but it results from the fact that he is not, in the estimation of the law, a fit person to exercise the elective franchise.

CAMPBELL, J., delivered the opinion of the court.

The doctrine of the authorities is, that " a pardon reaches both the punishment prescribed for the offence, and the guilt of the offender," and that " it releases the punishment and blots out of existence the guilt, so that, in the eye of the law, the offender is as innocent as if he had never committed the offence." " If granted after conviction, it removes the penalties and disabilities, and restores him [the convict] to all his civil rights ; it makes him, as it were, a new man, and gives him a new credit and capacity." *Ex parte Garland*, 4 Wall. 333, 380 ; *United States* v. *Padelford*, 9 Wall. 531 ; *United States* v. *Klein*, 13 Wall. 128 ; *Carlisle* v. *United States*, 16 Wall. 147 ; *Knote* v. *United States*, 95 U. S. 149. In the case last cited, it is said that " a pardon is an act of grace by which an offender is released from the consequences of his offence, so far as such release is practicable and within the control of the pardoning power, or of officers under its direction." " In contemplation of law, it so far blots out the offence, that afterwards *it cannot be imputed to him to prevent the assertion of his legal rights*." "A pardon of treason or felony, even after an attainder, so far clears the party from the infamy, and all other consequences thereof, that he may have an action against any who shall afterwards call him traitor or felon ; for the pardon makes him, as it were, a new man." Bac. Abr., tit. "Pardon," H. " There is only this limitation

to its operation : it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment." *Ibid.*

The Constitution of this State provides for excluding from suffrage persons convicted of " high crimes or misdemeanors." Art. 4, sect. 17 ; art. 7, sect. 2 ; art. 12, sect. 2.    The governor is authorized to pardon in all criminal cases, except in those of treason and impeachment.    Const., art. 5, sect. 10.

To determine the effect of a pardon, reference must be had to the established doctrine on that subject.   As already stated, the American and English authorities are univocal on this subject, and ascribe to a full pardon the magical effect of so absolving guilt as that it cannot be imputed to the person thus freed from all the consequences of conviction, as far as the pardoning power can exert control.   It must be assumed that it was the intent of the Constitution, in conferring on the governor the power to pardon all crimes, except treason, etc., to allow the full effect to such pardon, according to the established doctrine on the subject, and to embrace in the power to pardon, the " high crimes and misdemeanors," conviction of which was to exclude from suffrage.   The provision for exclusion from suffrage for crime, and for pardon of all crimes, except, etc., by the act of the governor, being parts of the same instrument, qualify each other.   A pardon by the governor is an act of sovereign grace, proceeding from the same source which makes conviction of crime a ground of exclusion from suffrage.   The act of absolution is of as high derivation and character as the act of proscription.   The pardon must be held to rehabilitate the person in all his rights as a citizen, and to deny to any officer of the State the right to impute to him the fact of his conviction.   After the pardon, he is as if he was never convicted.   It shall never be said of him that he was convicted.   The pardon obliterates the fact of conviction, and makes it as if it never was.

We have spoken of a pardon by the governor, because our Constitution relates to that.   The case before us involves a

pardon by the president of the United States, of a person convicted under the laws of the United States. The same effect must be given to such pardon as to a pardon by the governor, of one convicted under the law of the State. / And if conviction under the laws of the United States will exclude from suffrage under our Constitution, a pardon by the president must absolve from guilt, and free from all the consequences of conviction, in the same manner and to as full extent as would a pardon granted by the governor to one convicted under the law of the State. )

The view opposite to the foregoing is, that the intent of the Constitution is to exclude from suffrage a class of persons deemed unfit to be allowed to exercise this privilege, and that their unfitness is evidenced by the fact of conviction of crimes or misdemeanors; and that, as a pardon does not destroy the fact of their conviction, they are excluded because of their unfitness, thus evidenced. We reject this view, because its adoption requires the assumption that the grant of the power to pardon, as contained in the Constitution, is of less force than those provisions which contemplate the exclusion of certain persons from suffrage. Our view is, that the grant of the power to pardon embraced all the effects of a pardon, when granted; and that the object of conferring this beneficent power was, that its exercise might effect all those consequences which were understood to flow from such act of grace authorized by the sovereign towards the citizen.

If the true intent of the Constitution was doubtful, and policy were allowed to exert influence in resolving the doubt, our conclusion would be the same. It would be a subject of regret if there were no means of absolution by which the citizen could be restored to his rights. A man may be convicted wrongfully. Good men sometimes commit crimes or misdemeanors. Provocation and passion are liable to occur to all, and under their sway the best citizen might subject himself to conviction for what the law denominates a crime or misdemeanor. His guilt may be technical. There may be much to

extenuate his act in obedience to the promptings of passion, under severe trial from provocation. He may have universal sympathy from his fellow-citizens, who have known how well he discharged his duties in life, and who make large allowance for his act, but the law demands and secures his conviction. The governor may pardon, but henceforth this citizen is excluded from suffrage, while thousands less worthy are allowed to exercise the right of suffrage, simply because it may be that justice has not overtaken them.

A frame of government which tolerated such a result would be seriously defective. Fortunately, ours has made provision for an act of sovereign grace as efficient in its work of mercy as other provisions are for meeting the demands of justice. The plaintiff in error was entitled to be registered as an elector.

Judgment reversed.