# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-00701-SCT

*ZACHARY POLK*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 03/26/2013 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| TRIAL COURT ATTORNEYS: | RICHARD D. MITCHELL |
| | PATRICIA FAVER |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JEAN SHERMAN COOPER |
| | RICHARD D. MITCHELL |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| | JOHN R. HENRY, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART AND REMANDED - 10/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1. Zachary Polk was indicted on three counts in Oktibbeha County, Mississippi, for the sale of methylenedioxymethamphetamine (MDMA), hydrocodone, and alprazolam, in violation of Mississippi Code Section 41-29-139(a)(1). Miss. Code Ann. § 41-29-139(a)(1) (Rev. 2013). Polk entered a plea of guilty as to Count I for the sale of MDMA, and he was sentenced to serve ten years in the Mississippi Department of Corrections and ordered to pay a $5,000 fine. The district attorney "retired to files" Count II and Count III, based upon Polk

entering a plea of guilty as to Count I. In January 2012, Polk received a "full, complete, and unconditional pardon" from Governor Haley Barbour.

¶2. Thereafter, Polk filed a petition for expungement in the Circuit Court of Oktibbeha County, seeking to have all records expunged relating to his earlier arrest and indictment. Polk argued that Count I of the indictment, to which he pleaded guilty, should be expunged based on *Ex Parte Crisler*, 159 Miss. 247,132 So. 103 (1931). Polk also argued that Counts II and III, which were "retired to files," should be expunged pursuant to Mississippi Code Section 99-15-57(2).

¶3. The trial court determined that it was without statutory or constitutional authority to expunge Polk's record as to Count I. Regarding Counts II and III, the trial court also found that it was without statutory authority to expunge the charges. Polk appeals to this Court.

## STANDARD OF REVIEW

¶4. This Court applies a *de novo* standard of review when questions of law are to be considered on appeal. *Brown v. State*, 731 So. 2d 595, 598 (Miss. 1999).

## DISCUSSION

¶5. Polk asks this Court to hold that, since his pardon "obliterates his previous conviction," his record of conviction as to Count I should be expunged. Polk further asks this Court to hold that the trial court had statutory authority to expunge his criminal record(s) as to Counts II and III, which were retired to files. As will be explained, we cannot expunge his records as to Count I. As to Polk's latter request, however, we find that Polk's criminal record(s) with regard to Counts II and III, which were remanded to file, are eligible for expungement pursuant to Mississippi Code Section 99-15-26(5).

2

¶6. Criminal records in Mississippi are kept pursuant to Mississippi Code Section 45-21-1. This Court implicitly held in *Caldwell v. State*, 564 So. 2d 1371, 1372-73 (Miss. 1990) (upon rejecting claim that the circuit court has inherent power to expunge criminal records) that expungement of such records is an act of legislative grace. No common law right to the expungement of criminal records exists. *In re Expungement Application of G.P.B.*, 436 N.J. Super. 48, 50, 91 A.3d 648 (App. Div. 2014). And there is no constitutional right for such relief exists in either our state constitution or our federal constitution. *See, e.g.*, *Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 699 (5th Cir. 1997) ("There is no [federal] constitutional basis for a "right to expungement.") (internal quotation marks and citation omitted). A number of statutes in the Mississippi Code permit criminal defendants to apply for expungement, but none for expungement in the case of a pardon.

¶7. Recognizing this, Polk relies heavily on *Ex Parte Crisler*, 132 So. 103, 159 Miss. 247 (Miss. 1931), for the proposition that, because he received a full, complete and unconditional pardon, he is entitled to an expungement of the record for the offenses for which he was pardoned. Polk's reliance on *Crisler* and its broad language, however, is to no avail.

¶8. At the outset, the issue addressed in *Crisler*, was not whether a full pardon entitles the recipient to have the records of the offense expunged, but whether a full pardon to an attorney, after conviction and sentence which included an order forever disbarring the attorney from the practice of law within the state, absolved the attorney from all consequences of an order of disbarment and entitled him to reinstatement. In finding that the pardon did entitle the recipient to reinstatement, the Court in *Crisler* quoted language

3

from ***Jones v. Board of Registrars of Alcorn County***, 56 Miss. 766 (1879), which also did

not involve the question of expungement.[1]  This language reads as follows:

> The doctrine of the authorities is, that "a pardon reaches both the punishment
> prescribed for the offence, and the guilt of the offender," and that " it releases
> the punishment and blots out of existence the guilt, so that, in the eye of the
> law, the offender is as innocent as if he had never committed the offense." "If
> granted after conviction, it removes the penalties and disabilities, and restores
> him (the convict) to all his civil rights; it makes him, as it were, a new man,
> and gives him a new credit and capacity." [***Ex parte Garland***, 71 U.S. 333, 32
> How. Pr. 241, 18 L. Ed. 366, 4 Wall. 333 (1866)] . . . A pardon by the
> governor is an act of sovereign grace, proceeding from the same source which
> makes conviction of crime a ground of exclusion from suffrage. The act of
> absolution is of as high derivation and character as the act of proscription. The
> pardon must be held to rehabilitate the person in all his rights as a citizen, and
> to deny to any officer of the State the right to impute to him the fact of his
> conviction. After the pardon, he is as if he was never convicted. It shall never
> be said of him that he was convicted. The pardon obliterates the fact of
> conviction, and makes it as if it never was.

***Crisler***, 132 So. 2d 103 (quoting ***Jones***, 56 Miss. 766 (1879)).

¶9.     The above-quoted text primarily originates from the United States Supreme Court case

***Ex parte Garland***, 71 U.S. 333, 32 How. Pr. 241, 18 L. Ed. 366, 4 Wall. 333 (1866), which,

similar to ***Crisler***, concerned the right of a pardoned offender to practice law before the

Supreme Court.[2]  Notably, before even reaching the issue of the pardon, the Supreme Court

---

[1] In ***Jones***, the question presented was whether a postmaster, convicted of embezzling federal funds, but pardoned by the President of the United States, is restored to his right of suffrage (the right to vote in this State).  ***Jones***, 56 Miss. 766.

[2] Garland was an Arkansas attorney admitted to practice before the United States Supreme Court prior to the Civil War.  ***Garland***, 71 U.S. at 336.  After the war, Congress passed an act requiring any person seeking to practice before a United States court to take an oath affirming that he neither took up arms against the United States nor aided the Confederacy.  ***Id***. at 334-35.  Garland received a presidential pardon in 1865 for offenses committed by taking part in the rebellion.  He presented the pardon to the Court and requested that he be admitted to practice without having to take the oath.  ***Id***. at 336-37.

4

decided the case on other grounds–finding Congress's act unconstitutional under "bill of attainder" and "ex post facto" bases. *Garland*, 71 U.S. at 377.

¶10.    In addressing *Garland*'s broad language, the District of Columbia Court of Appeals explained:

> [*Garland*'s] discussion of the presidential pardon was unnecessary for its disposition of the case. By the time Justice Field reached the issue of the pardon, the case had already been decided. Irrespective of the pardon, the statute was deemed invalid on other constitutional grounds. The courts, both federal and state, have thus accurately described the "blotting out" discussion in *Garland* as "dictum."

*In re Adams*, 689 A.2d 6, 17 (D.C. App. 1997). *See also State v. Boykin*, 138 Ohio St. 3d 97, 103-04 (2013) (finding *Garland*'s language that "a pardon reaches both the punishment prescribed for the offence, and the guilt of the offender" as "simply dicta"); *R.J.L. v. State*, 887 So. 2d 1268, 1275 (Fla. 2004) (recognizing *Garland*'s language as dicta and holding that a pardon does not have the effect of eliminating guilt or the fact of conviction); *State v. Blanchard*, 100 S.W. 3d 226 (Tenn. Crim. App. 2002) (same); *U.S. v. Noonan*, 906 F.2d 952, 958 (3rd Cir. 1990) (finding that *Garland*'s language was clearly dictum and holding that "a pardon does not vitiate guilt"); *Bjerkan v. United States*, 529 F. 2d 125, 128 n. 2 (7th Cir. 1975) (pardon does not "restore the offender to a state of innocence in the eye of the law as was suggested" in *Garland*).

¶11.    The Supreme Court also has greatly narrowed *Garland's* statement(s) regarding the effect of a pardon. *See Nixon v. United States*, 506 U.S. 224, 113 S. Ct. 732, 112 L. Ed. 2d 1 (1993) ("the granting of a pardon is in no sense an overturning of a judgment of conviction by some other tribunal; it is an executive action that mitigates or sets aside *punishment*")

5

(emphasis added); ***Burdick v. United States***, 236 U.S. 79, 94, 35 S. Ct. 267, 59 L. Ed. 476 (1915) (a pardon "carries an imputation of guilt; acceptance a confession of it"); ***Carlesi v. New York***, 233 U.S. 51, 59, 34 S. Ct. 576, 58 L. Ed. 843 (1914) (in sentencing a defendant as a habitual offender, a court may consider "past offenses committed by the accused as a circumstance of aggravation, even although for such past offenses there had been a pardon granted"); ***Angle v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.***, 151 U.S. 1, 19, 14 S. Ct. 240, 38 L. Ed. 55 (1894) (although an executive pardon relieves the wrongdoer from public punishment, it does not relieve the wrongdoer from civil liability).

¶12.   Here, we read ***Crisler*** no further than that to which the ***Crisler*** Court ultimately limited its holding: "What we here hold, and all that we hold, is that a full pardon absolves an attorney at law from all the consequences of an order of disbarment . . . as part of the *punishment* for the commission of a crime." ***Crisler***, 132 So. at 104 (emphasis added).

¶13.   Having studied the matter before us, we find no convincing authority that a gubernatorial pardon automatically entitles the recipient to have his or her criminal record expunged.  To us, an unconditional pardon solely removes all legal punishment for the offense and prevents any future legal disability based on that offense.  It does not edit history. In the words of ***Boykin***, *supra*, "what's done is done." ***Boykin***, 4 N.E.3d at 986.  *See also* ***State v. Skinner***, 632 A.2d 82, 84-85 (Del. 1993) ("A pardon involves forgiveness[,] . . . not forgetfulness[,] . . . it does not wipe the slate clean.") (inner quotation marks and citation omitted).  Expungement from official records all records relating to an arrest, indictment, trial, and finding of guilt, in order to restore one to the status occupied prior thereto, is an altruistic objective for the legislative branch to contemplate and prescribe.

¶14.    There being no statutory basis for expungement of the record of the criminal conviction for which Polk was pardoned, the trial court correctly denied Polk's petition to expunge the record(s) pertaining to his criminal conviction.

¶15.    As to Polk's criminal records pertaining to Counts II and III, which were remanded to file based on Polk's guilty plea, we find that those records are eligible for expungement pursuant to Mississippi Code Section 99-15-26(5).

### CONCLUSION

¶16.    For the aforementioned reasons, we affirm in part and reverse in part the judgment of the trial court, and we remand this case to Circuit Court of Oktibbeha County for further proceedings consistent with this opinion.

¶17.    **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR AND KING, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., CHANDLER AND COLEMAN, JJ.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶18.    The majority is correct to hold that Counts II and III of Polk's indictment, having been "retired to the files," are eligible for expungement pursuant to Mississippi Code Section 99-15-26(5) (Supp. 2014). But under the law of this State, a full, complete, and unconditional gubernatorial pardon as to Count I, the charge of sale of methylenedioxymethamphetamine to which Polk pled guilty, entitles him to expungement. I therefore concur in part and dissent in part.

¶19.    Polk received the following pardon on January 10, 2012:

7

**NOW, THEREFORE**, I, Haley Barbour, Governor of the State of Mississippi, under and by virtue of the authority vested in me by the Constitution and Laws of this State, do hereby grant to Zachary Kane Polk a full, complete, and unconditional pardon for the crime and conviction named herein; and henceforth, *shall be absolved from all legal consequences of this crime and conviction*.

(Emphasis added.) In 1878, this Court adopted the existing jurisprudence of the United States Supreme Court on the subject of pardons:

> The doctrine of the authorities is, that "a pardon reaches both the punishment prescribed for the offence, and the guilt of the offender," and that "it releases the punishment and *blots out of existence* the guilt, so that, in the eye of the law the offender is as innocent *as if he had never committed the offense*." "If granted after conviction, it removes the penalties and disabilities, and restores him [the convict] to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity." **Ex parte Garland**, [71 U.S. 333, 18 L. Ed. 366,] 4 Wall. 333, 380 [(1866)]; **United States v. Padelford**, [76 U.S. 531, 19 L. Ed. 788,] 9 Wall. 531 [(1869)]; **United States v. Klein**, [80 U.S. 128, 20 L. Ed. 519,] 13 Wall. 128 [(1871)]; **Carlisle v. United States**, [83 U.S. 147, 21 L. Ed. 426,] 16 Wall. 147 [(1872)]; **Knote v. United States**, 95 U.S. 149[, 5 Otto 149, 24 L. Ed. 442 (1877)]. In the case last cited, it is said that "a pardon is an act of grace by which an offender is released from the consequences of his offence, so far as such release is practicable and within the control of the pardoning power, or of officers under its direction." "In contemplation of law, it so far *blots out* the offence . . . ."

**Jones v. Bd. of Registrars of Alcorn County**, 56 Miss. 766, 768, 31 Am. Rep. 385 (1878)

(emphasis added). In 1931, this Court reiterated and affirmed the broad rule from **Jones** in

**Ex Parte Crisler**:

> A pardon by the governor is an act of sovereign grace, proceeding from the same source which makes conviction of crime as ground of exclusion from suffrage. The act of absolution is of as high derivation and character as the act of proscription. The pardon must be held to rehabilitate the person in all his rights as a citizen, and to deny to any officer of the state the right to impute to him the fact of his conviction. *After the pardon, he is as if he was never convicted. It shall never be said of him that he was convicted. The pardon obliterates the fact of conviction, and makes it as if it never was.*

8

***Ex Parte Crisler***, 159 Miss. 247, 250, 132 So. 103 (1931) (quoting ***Jones***, 56 Miss. at 768) (emphasis added).

¶20.   The majority attempts to efface the memory of this jurisprudence by distinguishing ***Crisler***. The ***Crisler*** case involved an attorney who was seeking annulment of an order of disbarment entered following a conviction of embezzlement. ***Crisler***, 159 Miss. at 249. It was held in that case that "a full pardon absolves an attorney at law from all the consequences of an order of disbarment . . . as part of the punishment for the commission of a crime." ***Id.*** at 251. Nevertheless, ***Crisler*** approvingly reiterated the rule from ***Jones***, in which this Court restored suffrage to a person pardoned of his crime by the Governor. ***Jones***, 56 Miss. at 771. The rule articulated in ***Jones*** emanated from the jurisprudence of the United States Supreme Court, many cases of which involved the extent of the presidential pardons extended by Presidents Lincoln and Johnson to persons involved in rebellion against the United States during the 1860s. Chief Justice Salmon P. Chase opined that, "[i]n the case of ***Garland***, this court held the effect of a pardon to be such 'that in the eye of the law the offender is as innocent as if he had never committed the offence' . . . ." ***U.S. v. Padelford***, 76 U.S. 531, 542, 19 L. Ed. 788, 9 Wall. 531 (1869) (quoting ***Garland***, 4 Wall. at 380). Logic dictates that, in such case, there would be no public record.

¶21.   In spite of the wide latitude with which this Court historically has treated the effect of gubernatorial pardons, the majority today incorrectly and unnecessarily restricts their scope, relying on authority from jurisdictions with more restrictive standards than Mississippi observes. The majority relates that "[t]he Supreme Court has also greatly narrowed Garland's statement(s) regarding the effect of a pardon" (citing ***Nixon v. United States***, 506 U.S. 224,

113 S. Ct. 732, 122 L. Ed. 2d 1 (1993)). Indeed, various state and federal courts hold that the broad *Garland* language has been declared to be dicta, now disregarded by the United States Supreme Court. *See, e.g., In re Abrams*, 689 A.2d 6, 17 (D.C. 1997). But, even if the *Garland* language subsequently has been rendered dicta by the Supreme Court and other courts, its more lenient standard remains viable amid the common law of this State. *See Crisler*, 159 Miss. at 250; *Jones*, 56 Miss. at 768.

¶22. The majority additionally quotes language from the case of *Burdick v. United States*, 236 U.S. 79, 94-95, 35 S. Ct. 267, 59 L. Ed. 476 (1915), for the proposition that the language in *Garland* since has been disregarded. In that case, President Woodrow Wilson offered to Burdick "a full and unconditional pardon for all offenses against the United States which he . . . has committed or may have committed" in exchange for Burdick's testimony before a federal grand jury investigating alleged customs fraud. *Burdick*, 236 U.S. at 85. Burdick refused the pardon, having been convicted of no crime. *Id.* at 87. His continued refusal to testify before the grand jury resulted in an adjudication of contempt and incarceration. *Id.* at 86-87. The United States Supreme Court, which ultimately ordered Burdick discharged from custody, distinguished legislative immunity and a presidential pardon:

> The latter carries an imputation of guilt; acceptance a confession of it. The former has no such imputation or confession. It is tantamount to the silence of the witness. It is noncommittal. It is the unobtrusive act of the law given protection against a sinister use of his testimony, not like a pardon, requiring him to confess his guilt in order to avoid a conviction of it.

*Id.* at 94. *Burdick*, which involved an unaccepted, preconviction pardon, thus has no bearing on the question of whether a pardon entitles the pardonee to an expungement.

¶23. At the time the pardon issued, Polk, a former drug abuser now employed at the Betty Ford Clinic in Rancho Mirage, California, had not been incarcerated since 2009. Consequently, Polk's pardon, which proclaims that it is "full, complete, and unconditional," is constricted by this Court to a mere pretense of clemency, a fiction having no legal effect whatsoever. The majority opines that "an unconditional pardon solely removes all legal punishment for the offense and prevents any future legal disability based on that offense. It does not edit history." But a record of conviction is a "punishment," not unlike the restrictions on a person's liberty which may accompany conviction.[3]

¶24. Mississippi Code Section 99-15-26(5) (Supp. 2014) provides that: "[u]pon petition therefor, the court shall expunge the record of any case in which an arrest was made, the person arrested was released, and the case was dismissed or the charges were dropped or there was no disposition of such case." Coupled with the broad effect of a gubernatorial pardon under the common law of this State, which "makes [the fact of conviction] as if it never was," this statute mandates expungement. **Crisler**, 159 Miss. at 250 (quoting **Jones**, 56 Miss. at 769).

---

[3]Further, the State points out in its brief that an expungement would not "remove the criminal record from every database. Truth is the arrest, indictment and the conviction will always show up in background checks. The power of an expungement order is only directed at governmental agencies." If it is true that the criminal record is readily obtainable by other means, this substantially ameliorates the State's concern over expungement of the record of Polk's criminal history. Indeed the State's nerves can be soothed further by Mississippi Code Section 9-7-139 (Rev. 2002), which requires the maintenance of the pardon itself: "[t]he county shall furnish and the circuit clerk shall maintain a permanent record of pardons and the circuit clerk may certify the fact of any recorded pardon for use in any court or agency, state or federal."

11

¶25.    In light of the broad effect of gubernatorial pardons under the common law of this State and the statute which mandates expungement, I would hold that the Circuit Court of Oktibbeha County possessed authority to expunge Polk's record of conviction and erred by not so doing. Respectfully, I concur in part and dissent in part.

**DICKINSON, P.J., CHANDLER AND COLEMAN, JJ., JOIN THIS OPINION.**