PIERCE, Justice,
for the Court:
¶ 1. Zachary Polk was indicted on three counts in Oktibbeha County, Mississippi, for the sale of methylenedioxymethamphe- *968 tamine (MDMA), hydrocodone, and al-prazolam, in violation of Mississippi Code Section 41-29-139(a)(l). Miss.Code Ann. § 41-29-139(a)(l) (Rev. 2013). Polk entered a plea of guilty as to Count I for the sale of MDMA, and he was sentenced to serve ten years in the Mississippi Department of Corrections and ordered to pay a $5,000 fine. The district attorney “retired to files”' Count II and Count III, based upon Polk entering a plea of guilty as to Count I. In January 2012, Polk received a “full, complete, and unconditional pardon” from Governor Haley Barbour.
¶ 2. Thereafter, Polk filed a petition for expungement in the Circuit Court of Ok-tibbeha County, seeking to have all records expunged relating to his earlier arrest and indictment. Polk argued that Count I of the indictment, to which he pleaded guilty, should be expunged based on Ex Parte Crisler, 159 Miss. 247, 132 So. 103 (1931). Polk also argued that Counts II and III, which were “retired to files,” should be expunged pursuant to Mississippi Code Section 99-15-57(2).
¶ 3. The trial court determined that it was without statutory or constitutional authority to expunge Polk’s record as to Count I. Regarding Counts II and III, the trial court also found that it was without statutory authority to expunge the charges. Polk appeals to this Court.
STANDARD OF REVIEW
¶'4. This Court applies a de novo standard of review when questions of law are to be considered on appeal. Brown v. State, 731 So.2d 595, 598 (Miss.1999).
DISCUSSION
¶ 5. Polk asks this Court to hold that, since his pardon “obliterates his previous conviction,” his record of conviction as to Count I should be expunged. Polk further asks this Court to hold that the trial court had statutory authority to expunge his criminal record(s) as to Counts II and III, which were retired to files. As will be explained, we cannot expunge his records as to Count I. As to Polk’s latter request, however, we find that Polk’s criminal record(s) with regard to Counts II and III, which were remanded to file, are eligible for expungement pursuant to Mississippi Code Section 99-15-26(5).
6. Criminal records in Mississip-Mississipare kept pursuant to Mississippi Code Section 45-21-1. This Court implicitly held in Caldwell v. State, 564 So.2d 1371, 1372-73 (Miss.1990) (upon rejecting claim that the circuit court has inherent power to expunge criminal records) that expunge-expungeof such records is an act of legislative grace. No common law right to the ex-ex-of criminal records exists. In re Expungement Application of G.P.B., 436 N.J.Super. 48, 50, 91 A.3d 648 (App. Div.2014).' And there is no constitutional right for such relief in either our state constitution or our federal constitution. See, e.g., Sealed Appellant v. Sealed Appel-Appel130 F.3d 695, 699 (5th Cir.1997) (“There is no [federal] constitutional basis for a “right to expungement.”) (internal quotation marks and citation omitted). A number of statutes in the Mississippi Code permit criminal defendants to apply for expungement, but none exists for expunge-expungein the case of a pardon.
¶ 7. Recognizing this, Polk relies heavily on Ex Parte Crisler, 132 So. 103, 159 Miss. 247 (Miss.1931), for the proposition that, because he received a full, complete and unconditional pardon, he is entitled to an expungement of the record for the offenses for which he was pardoned. Polk’s reliance on Crisler and its broad language, however, is to no avail.
¶ 8. At the outset, the issue addressed in Crisler, was not whether a full pardon *969 entitles the recipient to have the records of the offense expunged, but whether a full pardon to an attorney, after conviction and sentence which included an order forever disbarring the attorney from the practice of law within the state, absolved the attorney from all consequences of an order of disbarment and entitled him to reinstatement. In finding that the pardon did entitle the recipient to reinstatement, the Court in Crisler quoted language from Jones v. Board of Registrars of Alcorn County, 56 Miss. 766 (1879), which also did not involve the question of expungement.[1] This language reads as follows:
The doctrine of the authorities is, that “a pardon reaches both the punishment prescribed for the offence, and the guilt of the offender,” and that “it releases the punishment and blots out of existence the guilt, so that, in the eye of the law, the offender is as innocent as if he had never committed the offense.” “If granted after conviction, it removes the penalties and disabilities, and restores him (the convict) to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.” [Ex parte Garland, 71 U.S. 333, 32 How. Pr. 241, 18 L.Ed. 366, 4 Wall. 333 (1866) ] ... A pardon by the governor is an act of sovereign grace, proceeding from the same source which makes conviction of crime a ground of exclusion from suffrage. The act of absolution is of as high derivation and character as the act of proscription. The pardon must be held to rehabilitate the person in all his rights as a citizen, and to deny to any officer of the State the right to impute to him the fact of his conviction. After the pardon, he is as if he was never convicted. It shall never be said of him that he was convicted. The pardon obliterates the fact of conviction, and makes it as if it never was.
Crisler, 132 So. at 103 (quoting Jones, 56 Miss. 766 (1879)).
¶ 9. The above-quoted text primarily originates from the United States Supreme Court case Ex parte Garland, 71 U.S. 333, 32 How. Pr. 241, 18 L.Ed. 366, 4 Wall. 333 (1866), which, similar to Crisler, concerned the right of a pardoned offender to practice law before the Supreme Court.[2] Notably, before even reaching the issue of the pardon, the Supreme Court decided the case on other grounds-finding Congress’s act unconstitutional under “bill of attainder” and “ex post facto” bases. Garland, 71 U.S. at 377.
¶ 10. In addressing Garland ⅛ broad language, the District of Columbia Court of Appeals explained:
[Garland’s] discussion of the presidential pardon was unnecessary for its disposition of the case. By the time Justice Field reached the issue of the pardon, the case had already been decided. Irrespective of the pardon, the statute was deemed invalid on other constitutional grounds. The courts, both federal and state, have thus accu *970 rately described the “blotting out” discussion in Garland as “dictum.”
In re Abrams, 689 A.2d 6, 17 (D.C.App. 1997). See also State v. Boykin, 138 Ohio St.3d 97,103-04, 4 N.E.3d 980 (2013) (finding Garland’s language that “a pardon reaches both the punishment prescribed for the offence, and the guilt of the offender” as “simply dicta”); R.J.L. v. State, 887 So.2d 1268, 1275 (Fla.2004) (recognizing Garland’s language as dicta and holding that a pardon does not have the effect of eliminating guilt or the fact of conviction); State v. Blanchard, 100 S.W.3d 226 (Tenn.Crim.App.2002) (same); U.S. v. Noonan, 906 F.2d 952, 958 (3rd Cir.1990) (finding that Garland’s language was clearly dictum and holding that “a pardon does not vitiate guilt”); Bjerkan v. United States, 529 F.2d 125, 128 n. 2 (7th Cir.1975) (pardon does not “restore the offender to a state of innocence in the eye of the law as was suggested” in Garland).
¶ 11. The Supreme Court also has greatly narrowed Garland’s statement(s) regarding the effect of a pardon. See Nixon v. United States, 506 U.S. 224,113 S.Ct. 732,112 L.Ed.2d 1 (1993) (“the granting of a pardon is in no sense an overturning of a judgment of conviction by some other tribunal; it is an executive action that mitigates or sets aside 'punishment ”) (emphasis added); Burdick v. United States, 236 U:S. 79, 94, 35 S.Ct. 267, 59 L.Ed. 476 (1915) (a pardon “carries an imputation of guilt; acceptance a confession of it”); Carlesi v. New York, 233 U.S. 51, 59, 34 S.Ct. 576, 58 L.Ed. 843 (1914) (in sentencing a defendant as a habitual offender, a court may consider “past offenses committed by the accused as a circumstance of aggravation, even although for such past offenses there had been a pardon granted”); Angle v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 151 U.S. 1, 19, 14 S.Ct. 240, 38 L.Ed. 55 (1894) (although an executive pardon relieves the wrongdoer from public punishment, it does not relieve the wrongdoer from civil liability).
¶ 12. Here, we read Crisler no further than that to which the Crisler Court ultimately limited its holding: “What we here hold, and all that we hold, is that a full pardon absolves an attorney at law from all the consequences of an order of disbarment ... as part of the punishment for the commission of a crime.” Crisler, 132 So. at 104 (emphasis added).
¶ 13. Having studied the matter before us, we find no convincing authority that a gubernatorial pardon automatically entitles the recipient to have his or her criminal record expunged. To us, an unconditional pardon solely removes all legal punishment for the offense and prevents any future legal disability based on that offense. It does not edit history. In the words of Boykin, supra, “what’s done is done.” Boykin, 4 N.E.3d at 986. See also State v. Skinner, 632 A.2d 82, 84-85 (Del. 1993) (“A pardon involves forgiveness[,] ... not forgetfulness!,] • • • ⅛ does not wipe the slate clean.”) (inner quotation marks and citation omitted). Expungement from official records all records relating to an arrest, indictment, trial, and finding of guilt, in order to restore one to the status occupied prior thereto, is an altruistic objective for the legislative branch to contemplate and prescribe.
¶ 14. There being no statutory basis for expungement of the record of the criminal conviction for which Polk was pardoned, the trial court correctly denied Polk’s petition to expunge the record(s) pertaining to his criminal conviction.
¶ 15. As to Polk’s criminal records pertaining to Counts II and III, which were remanded to file based on Polk’s guilty plea, we find that those records are *971 eligible for expungement pursuant to Mississippi Code Section 99-15-26(5).
CONCLUSION
¶ 16. For the aforementioned reasons, we affirm in part and reverse in part the judgment of the trial court, and we remand this case to Circuit Court of Oktib-beha County for further proceedings consistent with this opinion.
¶ 17. AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
WALLER, C.J., RANDOLPH, P.J., LAMAR AND KING, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., CHANDLER AND COLEMAN, JJ.

. In Jones, the question presented was whether a postmaster, convicted of embezzling federal funds, but pardoned by the President of the United States, is restored to his right of suffrage (the right to vote in this State). Jones, 56 Miss. 766.

. Garland was an Arkansas attorney admitted to practice before the United States Supreme Court prior to the Civil War. Garland, 71 U.S. at 336. After the war, Congress passed an act requiring any person seeking to practice before a United States court to take an oath affirming that he neither took up arms against the United States nor aided the Confederacy. Id. at 334-35. Garland received a presidential pardon in 1865 for offenses committed by taking part in the rebellion. He presented the pardon to the Court and requested that he be admitted to practice without having to take the oath. Id. at 336-37.