# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-01217-SCT

*REBECCA HENTZ a/k/a EMILY REBECCA*
*HENTZ*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/18/2013 |
| TRIAL JUDGE: | HON. JAMES MCCLURE, III |
| COURT FROM WHICH APPEALED: | TALLAHATCHIE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TOMMY WAYNE DEFER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 12/11/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1. This Court is presented with the following issue: whether a convicted felon is entitled to an expungement of her conviction after receiving an executive pardon. Because there is no statutory authority in Mississippi for the courts to order an expungement under these circumstances, we affirm the trial court's order denying the request for expungement in today's case.

**FACTS**

¶2.     On March 10, 2000, the Tallahatchie County Grand Jury indicted Rebecca Hentz for one count of conspiracy to manufacture methamphetamine and two counts of attempt to manufacture methamphetamine. On September 25, 2000, Hentz pleaded guilty to one count of attempt to manufacture methamphetamine. The Circuit Court of the First Judicial District of Tallahatchie County sentenced Hentz to thirty years, suspended, unsupervised probation, and a $5,000 fine. The trial court remanded to the file the other counts in Hentz's indictment.

¶3.     On January 10, 2012, Governor Haley Barbour granted Hentz a "full, complete, and unconditional pardon" for the attempt-to-manufacture-methamphetamine conviction. Later in 2012, on October 2, Hentz filed a Motion to Expunge Record, claiming that the records of her conviction should be expunged because she had received a pardon. On May 20, 2013, Hentz filed an Amended Motion to Expunge Record, which included additional support for the contention that the records of her conviction should be expunged. After hearing oral argument from Hentz's counsel, the trial court denied her motion. Hentz then timely appealed to this Court.

**ANALYSIS**

¶4.     Hentz raises one issue on appeal: whether a convicted felon may have her criminal record expunged after receiving an executive pardon.[1]

¶5.     Expungement is statutory in nature, and the Mississippi Legislature has "authorized expungement of criminal offender records in limited cases . . . ." ***Caldwell v. State***, 564 So.

---

[1] ***Polk v. State***, __ So. 3d __, 2014 WL 5035942 (Miss. Oct. 9, 2014), a case in which the mandate has not issued, addresses the same issue as is presented in today's case.

2d 1371, 1372 (Miss. 1990). As an example, Mississippi Code Section 99-19-71 permits criminal defendants to apply for expungement in a number of circumstances: (1) persons convicted of a misdemeanor as a first offender; (2) persons convicted of certain felonies as a first offender;[2] (3) and persons in "any case in which an arrest was made, the person arrested was released and the case was dismissed or the charges were dropped or there was no disposition of such case." *See also* Miss. Code Ann. § 99-15-59 (Rev. 2007) (expungment of misdemeanor charges); Miss. Code Ann. § 99-15-57(2) (Rev. 2007) ("Upon petition therefor, the court shall expunge the record of any case in which an arrest was made, the person arrested was released and the case was dismissed or the charges were dropped or there was no disposition of such case."); Miss. Code Ann. § 99-23-23 (Rev. 2007) (expungement upon completion of drug court program).

¶6.    Hentz concedes that there is no statutory provision for expungement in cases of a pardon. Rather than claiming she is statutorily entitled to have her criminal record expunged, Hentz claims that the nature of a pardon itself should permit the expungement. In support of this proposition, Hentz quotes ***Jones v. Board of Registrars***, 56 Miss. 766 (1879). In ***Jones***, a convicted felon received a presidential pardon for federal embezzlement charges and subsequently was denied voter registration. *Id.* at 766. Finding that Jones might register to vote after the pardon, this Court stated:

> If granted after conviction, [the pardon] removes the penalties and disabilities,
> and restores him [the convict] to all his civil rights; it makes him, as it were,

---

[2] Hentz's conviction – attempt to manufacture methamphetamine under Mississippi Code Section 97-1-7 – is not one of the specific felonies listed in Section 99-19-71. *See* Miss. Code Ann. § 97-1-7 (Rev. 2014).

3

a new man, and gives him a new credit and capacity. . . . A pardon is an act of grace by which an offender is released from the consequences of his offense, so far as such release is practicable and within the control of the pardoning power, or of officers under its direction. In contemplation of law, it so far blots out the offence, that afterwards it cannot be imputed to him to prevent the assertion of his legal rights. A pardon of treason or felony, even after an attainder, so far clears the party from the infamy, and all other consequences thereof, that he may have an action against any who shall afterwards call him traitor or felon; for the pardon makes him, as it were, a new man.

*Id.* at 768 (internal citations and quotations omitted). Although *Jones* discusses the after-effects of pardon, it does not specifically address expungement. *See id.*

¶7. Hentz also cites *Ex parte Crisler*, 159 Miss. 247, 132 So. 103 (1931), in support of her contention that the nature of a pardon should permit the trial court to expunge her criminal record. While *Crisler* does state that a "full pardon absolves the party from all the legal consequences of his crime and his conviction, direct and collateral; including the punishment, whether of imprisonment pecuniary penalty, or whatever else the law has provided;" the opinion expressly limits itself to cases of attorney disbarment. *Id.* at 103-04 (quoting 8 Bishop's Criminal Law § 916) ("What we here hold, and all that we do hold, is that a full pardon absolves an attorney at law from all the consequences of an order of disbarment . . . .").

¶8. *Jones*, 56 Miss. 766, and *Crisler*, 159 Miss. 247, both cite *Ex parte Garland*, 71 U.S. 333, 18 L. Ed. 366 (1866), in which the United States Supreme Court also concluded that pardon "releases the punishment and blots out the existence of guilt." The language in *Garland*, however, has since been held to be dicta; and more recent caselaw holds that a pardon does not "blot out" the existence of guilt:

4

But modern case law emphasizes . . . that this historical language was dicta and is inconsistent with current law. *See In re North*, 62 F. 3d 1434, 1437 (D.C. Cir. 1994). A pardon in no way reverses the legal conclusion of the court; it "does not blot out guilt or expunge a judgment of conviction." *North*, 62 F. 3d at 1437; *see also Nixon v. United States*, 506 U.S. 224, 232, 113 S. Ct. 732, 122 L. Ed. 1 (1993) ("a pardon is in no sense an overturning of a judgment of conviction by some other tribunal"); *Burdick v. United States*, 236 U.S. 79, 94, 35 S. Ct. 267, 59 L. Ed. 476 (1915) (a pardon "carries an imputation of guilt"). The effect of a pardon is not to prohibit all *consequences* of a pardoned conviction, but rather to preclude future *punishment* for the conviction. *See Nixon*, 506 U.S. at 232, 113 S. Ct. 732; *Bjerkan v. United States*, 529 F. 2d 125, 127-28 (7th Cir. 1975).

*Hirschberg v. Commodity Futures Trading Comm'n*, 414 F. 3d 679, 682 (7th Cir. 2005) (emphasis in original); *see also Fletcher v. Graham*, 192 S.W.3d 350 ("[W]hile a pardon will foreclose punishment of the offense itself, it does not erase the fact that the offense occurred, and that fact may later be used to pardonee's detriment.").

¶9. Further, recent caselaw supports the contention that, absent statutory authority, expungement is not permitted after a pardon. In *Eubanks v. State*, 53 So. 3d 846 (Miss. Ct. App. 2011), a defendant with a driving-under-the-influence conviction requested that the court consider an "equitable expungement" in cases where expungement was not statutorily provided. The Court of Appeals rejected this argument, finding that trial courts had the power to expunge a felony conviction pursuant to a guilty plea only under certain statutory conditions. *Id.* at 848. *See also Turner v. State*, 876 So. 2d 1056, 1059 (Miss. Ct. App. 2004) (recognizing that circuit courts lack inherent power to order expungement of criminal records).

5

¶10. Although this Court has not directly addressed the issue presented in today's case,[3] the Mississippi Attorney General's Office has addressed this exact issue. *See Smith*, 2012 Op. Att'y Gen. 337, 2012 WL 3611766 (Miss. A.G. Aug. 10, 2012). The Attorney General was presented with the following question: "Does receiving a pardon from the Governor allow the defendant to then request that the record of the conviction, which includes the arrest, indictment, conviction, and sentence be expunged?" *Id.* The opinion recognizes that "there is no statutory or constitutional authority providing for the expungement of an offense as a result of a pardon by the Governor."[4] *Id.* The dissent emphasizes that Article 5, Section 124 of the Constitution of the State of Mississippi empowers the Governor to grant reprieves and pardons, and that to give that section effect, an expungement must go part and parcel with the pardon. However, Article 5, Section 124, unlike the U.S. constitution and that of some other states,[5] limits the Governor's pardon power by mandating that "no pardon shall be granted before conviction." Miss. Const. art. 5, § 124. Thus, the constitution specifies that no pardon may be granted until a record of the crime is created via conviction. The Legislature has not chosen to negate this record required by the constitution by providing for

_____

[3] *See* fn. 1 *supra*.

[4] The dissent argues that Mississippi Code Section 99-15-57(2) provides statutory authority for expungement in this case, because it provides for expungement when "an arrest was made, the person arrested was released and the case was dismissed or the charges were dropped or there was no disposition of such case." We point out that none of those situations apply. The case was not dismissed, the charges were not dropped, and the case was disposed of via Hentz's conviction. Indeed, each of these situations are applicable *only* to cases in which *no* conviction exists, and thus are clearly inapplicable here.

[5] *See* U.S. Const. Art. II § 2, cl. 1; ***Fletcher v. Graham***, 192 S.W.3d 350 (Ky. 2006).

expungement in the case of a pardoned offense, indicating that the history behind the offense should be retained unless or until the Legislature provides otherwise.

¶11. Because there is no statutory basis in Mississippi for an expungement after a criminal defendant receives an executive pardon, the trial court in today's case did not err in denying Hentz's motion to expunge her criminal record. As such, we affirm the judgment of the trial court.

## CONCLUSION

¶12. For the reasons discussed above, we affirm the judgment of the Circuit Court of the First Judicial District of Tallahatchie County.

¶13. **AFFIRMED.**

**WALLER, C.J., AND PIERCE, J., CONCUR. RANDOLPH, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., CHANDLER AND COLEMAN, JJ. LAMAR, J., NOT PARTICIPATING.**

**RANDOLPH, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶14. Justice King's opinion is not only well-stated and most persuasive, it reaches the same conclusion agreed to by a majority of the members of this Court, with all nine justices participating, in a prior case. *See Polk v. State of Mississippi*, 2013-CA-00701-SCT (Oct. 9, 2014) (*reh'g denied* Dec. 4, 2014). In *Polk*, five justices agreed that no authority exists under this Court's caselaw or our state's statutes allowing for the expungement of the record of a criminal conviction for which a pardon was granted. In today's case, the eight justices participating are deadlocked on the same issue.

7

¶15.    Thus, I am constrained to specially concur and express my view that the issuance of a judgment of affirmance is the appropriate disposition of the case *sub judice*. Today, four justices agree to affirm the trial court's judgment, and four justices disagree. Thus, the judgment of the trial court should be affirmed. *See* ***Rockett Steel Works v. McIntyre***, 15 So. 2d 624 (Miss. 1943) ("trial court must be, and is, affirmed").

¶16.    This disposition was first articulated by Chief Justice Marshall for the United States Supreme Court. Chief Justice Marshall wrote:

> No attempt will be made to analyze [the parties' arguments and cited cases], or to decide on their application to the case before us, because the Judges are divided respecting it. Consequently, the principles of law which have been argued cannot be settled; but the judgment is affirmed, the court being divided in opinion upon it.

***Etting v. Bank of United States***, 24 U.S. 59, 78, 11 Wheat. 59, 6 L. Ed. 419 (1826). In ***Durant v. Essex Co.***, 74 U.S. 107, 7 Wall. 107, 19 L. Ed. 154 (1868), addressing the effect of affirmance by a divided court, Justice Field wrote that:

> There is nothing in the fact that the judges of this court were divided in opinion upon the question whether the decree should be reversed or not, and, therefore, ordered an affirmance of the decree of the court below. The judgment of affirmance was the judgment of the entire court. The division of opinion between the judges was the reason for the entry of that judgment; but the reason is no part of the judgment itself.

***Durant***, 74 U.S. at 110. If division of opinion is the reason for the judgment, what purpose do the conflicting opinions serve? The principles of law argued cannot be settled by eight evenly divided justices, and the conflicting opinions provide no authority for the determination of other cases.

¶17.    The U.S. Supreme Court has explained that:

8

it is obvious that that which has been done must stand unless reversed by the affirmative action of a majority. It has therefore been the **invariable practice** to affirm, **without opinion**, any judgment or decree which is not decided to be erroneous by a majority of the court sitting in the cause. . . . [A]n affirmance by an equally divided court is . . . a conclusive determination and adjudication of the matter adjudged; but the principles of law involved not having been agreed upon by a majority of the court sitting prevents the case from becoming an authority for the determination of other cases, either in this or in inferior courts.

*Hertz v. Woodman*, 218 U.S. 205, 212-14, 30 S. Ct. 621, 622-23, 54 L. Ed. 1001 (1910) (emphasis added).

¶18.   Thus, as the judgment of the Circuit Court of Tallahatchie County has not been decided to be erroneous by a majority of the justices sitting in this case, we should affirm without opinion.

**KITCHENS, JUSTICE, DISSENTING:**

¶19.   The breadth of Mississippi common law regarding the effect of a gubernatorial pardon persuades me that Hentz is entitled to an expungement of her criminal record. Because my learned colleagues in the plurality have reached a contrary conclusion, I respectfully dissent.

¶20.   Hentz received the following pardon on January 10, 2012:

**NOW, THEREFORE**, I, Haley Barbour, Governor of the State of Mississippi, under and by virtue of the authority vested in me by the Constitution and Laws of this State, do hereby grant to Rebecca Hentz née a/k/a Rebecca Whatley a/k/a Rebecca Hentz a full, complete and unconditional pardon for the crime and conviction named herein; and henceforth, *shall be absolved from all legal consequences of this crime and conviction.*

(Emphasis added.) This Court's longstanding jurisprudence regarding the scope of executive pardons tracks that of the United States Supreme Court:

The doctrine of the authorities is, that "a pardon reaches both the punishment prescribed for the offence, and the guilt of the offender," and that "it releases

9

the punishment and *blots out of existence* the guilt, so that, in the eye of the law the offender is as innocent *as if he had never committed the offense*." "If granted after conviction, it removes the penalties and disabilities, and restores him [the convict] to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity." ***Ex parte Garland***, [71 U.S. 333, 18 L. Ed. 366,] 4 Wall. 333, 380 [(1866)]; ***United States v. Padelford***, [76 U.S. 531, 19 L. Ed. 788,] 9 Wall. 531 [(1869)]; ***United States v. Klein***, [80 U.S. 128, 20 L. Ed. 519,] 13 Wall. 128 [(1871)]; ***Carlisle v. United States***, [83 U.S. 147, 21 L. Ed. 426,]16 Wall. 147 [(1872)]; ***Knote v. United States***, 95 U.S. 149[, 5 Otto 149, 24 L. Ed. 442 (1877)]. In the case last cited, it is said that "a pardon is an act of grace by which an offender is released from the consequences of his offence, so far as such release is practicable and within the control of the pardoning power, or of officers under its direction." "In contemplation of law, it so far *blots out* the offence . . . ."

***Jones v. Bd. of Registrars of Alcorn County***, 56 Miss. 766, 768, 31 Am. Rep. 385 (1879)

(emphasis added). Likewise, in ***Ex Parte Crisler***, this Court maintained the rule from ***Jones***

that:

A pardon by the governor is an act of sovereign grace, proceeding from the same source which makes conviction of crime a ground of exclusion from suffrage. The act of absolution is of as high derivation and character as the act of proscription. The pardon must be held to rehabilitate the person in all his rights as a citizen, and to deny to any officer of the State the right to impute to him the fact of his conviction. *After the pardon, he is as if he was never convicted. It shall never be said of him that he was convicted. The pardon obliterates the fact of conviction, and makes it as if it never was*.

***Ex Parte Crisler***, 159 Miss. 247, 250, 132 So. 103 (1931) (quoting ***Jones***, 56 Miss. at 768)

(emphasis added).

¶21.     The plurality attempts to distinguish ***Crisler***: "the opinion expressly limits itself to

cases of attorney disbarment." ***Crisler***, decided in 1931, did involve an attorney, disbarred

from the practice of law following a conviction of embezzlement, who sought reversal of the

order of disbarment. ***Crisler***, 159 Miss. at 249. Likewise is true, as the plurality notes, that

this Court held that "a full pardon absolves an attorney at law from all the consequences of

10

an order of disbarment . . . as part of the punishment for the commission of a crime." *Id.* at 251. But *Crisler* relied on a broader rule articulated by this Court in the 1878 *Jones* case, which involved restoration of suffrage to a convicted person following a presidential pardon. *Jones*, 56 Miss. at 771. The *Jones* Court cited precedents in which the United States Supreme Court contemplated the extent of the presidential pardons offered by Presidents Lincoln and Johnson to persons involved in rebellion against the United States during the 1860s. In *U.S. v. Padelford*, for instance, Chief Justice Salmon P. Chase opined that, "[i]n the case of *Garland*, this court held the effect of a pardon to be such 'that in the eye of the law the offender is as innocent *as if he had never committed the offence'* . . . ." *U.S. v. Padelford*, 76 U.S. 531, 543, 19 L. Ed 788, 9 Wall. 531 (1869) (quoting *Garland*, 4 Wall. at 380) (emphasis added).

¶22.    In spite of its broad, sweeping language, the plurality recites that "[t]he language in *Garland*, however, has since been held to be dicta; and more recent caselaw holds that a pardon does not 'blot out' the existence of guilt . . . ." (citing *Hirschberg v. Commodity Futures Trading Comm'n*, 414 F. 3d 679, 682 (7th Cir. 2005)). With respect, an opinion from the United States Court of Appeals for the Seventh Circuit is of no moment to this Court's analysis of the effect given an executive pardon under controlling Mississippi case law. Beyond that, one of the cases upon which the Seventh Circuit relied to support its position that the *Garland* language more recently has been rendered dicta is *Burdick v. United States*, 236 U.S. 79, 94, 35 S. Ct. 267, 59 L. Ed. 476 (1915). There, President Woodrow Wilson offered Burdick a pardon in exchange for his testimony. *Burdick*, 236 U.S. at 85. Burdick refused the pardon, then was held in contempt and incarcerated. *Id.* at 87. The

11

question before the United States Supreme Court, which ultimately ordered Burdick discharged from custody, involved the distinction between legislative immunity and a presidential pardon:

> The latter carries an imputation of guilt; acceptance a confession of it. The former has no such imputation or confession. It is tantamount to the silence of the witness. It is noncommittal. It is the unobtrusive act of the law given protection against a sinister use of his testimony, not like a pardon, requiring him to confess his guilt in order to avoid a conviction of it.

*Burdick*, 236 U.S. at 95. But *Burdick* involved a preconviction pardon which Burdick refused; the case is silent regarding whether a pardon entitles the pardonee to an expungement.

¶23.   The plurality's citation of expungement cases from the Mississippi Court of Appeals, likewise, is not helpful regarding the effect of a gubernatorial pardon on a convict's request for expungement. Neither *Eubanks v. State*, 53 So. 3d 846 (Miss. Ct. App. 2011), nor *Turner v. State*, 876 So. 2d 1056, 1059 (Miss. Ct. App. 2004), addresses the question that is before this Court today: whether a gubernatorial pardon entitles a pardonee to an expungement. The opinion from the Mississippi Attorney General referenced by the majority answers the question in the negative. But in the context of an adversarial system in which the Attorney General is an interested party in this very case, his opinion, while interesting, is far from dispositive.

¶24.   The plurality further opines that, "[e]xpungement is statutory in nature, and the Mississippi Legislature has 'authorized expungement of criminal offender records in limited cases . . . .' *Caldwell v. State*, 564 So. 2d 1371, 1372 (Miss. 1990)." But Mississippi Code Section 99-15-52(2) (Rev. 2007) provides that, "[u]pon petition therefor, the court shall

expunge the record of any case in which an arrest was made, the person arrested was released and the case was dismissed or the charges were dropped or there was no disposition of such case." Section 99-15-57(2), coupled with the breadth of the common law language articulated in *Crisler* that a gubernatorial pardon "makes [the fact of conviction] as if it never was," mandates expungement. *Crisler*, 159 Miss. at 250.

¶25.    Article 5, Section 124, of the Constitution of the State of Mississippi empowers the governor "to grant reprieves and pardons." Today, the plurality diminishes the effect of gubernatorial pardons in Mississippi. That which previously was regarded as "an act of sovereign grace" now is relegated to a mere piece of paper emblazoned with the dubious phrase "absolved from all legal consequences of this crime and conviction." I, therefore, dissent.

**DICKINSON, P.J., CHANDLER AND COLEMAN, JJ., JOIN THIS OPINION.**